UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY KENNARD,

                Petitioner,                         Case No. 16-cv-12523
                                                    Hon. Matthew F. Leitman

v.

TONY TRIERWEILER,

                Respondent.

_____/

## ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF Nos. 1, 25), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Rodney Kennard is a state prisoner incarcerated at the Alger Maximum Correctional Facility in Munising, Michigan. On July 5, 2016, Kennard filed a *pro se* petition for a writ of habeas corpus in this Court seeking relief under 42 U.S.C. § 2254. (*See* Pet., ECF No. 1; Am. Pet., ECF No. 25.) In the petition, Kennard seeks relief from his state-court conviction for first-degree, premeditated murder, in violation of Mich. Comp. Laws § 750.316(1)(a). (*See id.*)

The Court has carefully reviewed the petition and concludes that Kennard is not entitled to federal habeas relief. Therefore, for the reasons explained below, the Court **DENIES** Kennard's petition and **DENIES** Kennard a certificate of appealability. However, it **GRANTS** Kennard leave to proceed *in forma pauperis* on appeal.

# I

## A

On October 21, 2013, a jury in the Wayne County Circuit Court convicted Kennard of first-degree, premeditated murder in a joint trial with his co-defendant Lester Martez Benford. The Michigan Court of Appeals summarized the evidence presented at Kennard's jury trial as follows:

> Defendants were convicted of murdering Delrico Taylor, who died from multiple gunshot wounds. The victim's body was discovered during the early morning hours of September 12, 2011, in the garage of a vacant home in Detroit. The body had been badly burned. An odor of gasoline was detected when the body was moved. Bullets removed from the victim's body and shell casings found near the scene indicated that two firearms were involved in the shooting.

> Earlier in the evening, the victim was at a nearby home with his longtime friend, Locaster Croskey. The victim flagged down defendants Benford and Kennard, who had known the victim for many years. A few months before the shooting, the victim had stabbed defendant Benford, causing him to seek medical treatment. As the men entered Croskey's home, defendant Benford threatened to shoot a small dog that was barking at him. Eventually, the victim left Croskey's home with defendants and Antowan Stitts to go to a liquor store.

> Defendants and Stitts were charged with the victim's murder, but Stitts pleaded guilty to accessory after the fact, MCL 750.505, pursuant to a plea agreement. At trial, he testified that the men were walking when he heard a clicking sound. According to Stitts, defendant Benford tried to shoot the victim, but Benford's gun, described by Stitts as a .380, jammed. The victim and defendant

Benford then struggled over the gun, which discharged, striking defendant Benford in the hands. The victim fled, but defendant Kennard chased him down and struck him. The victim fell to the ground, bleeding and unconscious. The victim was taken to the garage, after which defendant Kennard retrieved a .22 rifle and shot the victim three times. Defendant Benford left to seek treatment at a hospital. Stitts gave defendant Kennard his gas can, and defendant Kennard set the victim on fire.

A neighbor, Michael Pokladek, heard a loud sound and went outside where he saw four men. It appeared that three of the men were fighting one man. One of the taller men pulled a black Glock handgun and fired a shot at the victim. Pokladek did not want to get involved and went into his house where he heard additional shots fired.

Tanise Page lived with her children, Howard Grandberry, and her cousin Ericka Williams, who was defendant Kennard's girlfriend. On September 12, 2011, defendant Kennard entered the home with Stitts and an unknown male. They went into the bathroom and washed up for 20 minutes. Later that day, individuals came to the home looking for defendant Kennard. Within three days of the offense, Page's home was firebombed. She went to the police and attributed the arson to retaliation against defendant Kennard. In December 2011, Page heard defendant Kennard tell someone that what happened to the victim could happen to them, which she interpreted as bragging.

Nakisha Jenkins, the mother of the victim's child, was also a close friend of defendant Benford. Defendant Benford told Jenkins that he was walking with the victim when two men jumped out of a car with guns and attacked them. Defendant Benford was shot in the hands. However, defendant Benford told a police officer at the hospital that he was injured when the victim tried to shoot him and the two men struggled over the gun.

> Defendants presented evidence that Stitts either denied or minimized his role to the police and his probation officer, but told other inmates that he committed the murder. Additionally, on cross-examination, Stitts admitted that he avoided life imprisonment by entering into the plea agreement and now faced a maximum penalty of a five-year prison term for the charge of accessory after the fact. Defendant Kennard's girlfriend, Ericka Williams, offered an alibi that she saw defendant Kennard at her home shortly after she heard gunshots.

*People v. Kennard*, 2015 WL 6438144, at ** 1-2 (Mich. Ct. App. Oct. 22, 2015).

The state trial court sentenced Kennard to life imprisonment without parole. On direct appeal to the Michigan Court of Appeals, Kennard, through counsel, raised the following claims: (1) there was an unlawful delay between the offense and his arrest, (2) the state trial court wrongly declined to appoint him expert witnesses, (3) the trial court should have granted him a separate trial from his co-defendant, (4) he was denied the right to confront his accusers at trial, and (5) cumulative error. Kennard also filed a *pro se* Standard 4 Brief in which he raised additional claims concerning: (1) the ineffective assistance of trial counsel, (2) prosecutorial misconduct, (3) the exclusion of evidence, and (4) an alleged inconsistent verdict. The Michigan Court of Appeals rejected all of these claims. *See id.* Kennard then filed an application for leave to appeal in the Michigan Supreme Court. On May 24, 2016, that court denied leave. *See People v. Kennard*, 878 N.W.2d 852 (Mich. 2016).

4

**B**

On July 5, 2016, Kennard filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.)  In  that petition, Kennard asserted that: (1) he was denied due process of law by the lengthy delay between the offense and his arrest; (2) the state trial court denied him his right to present a defense when the court denied his request for funds to hire experts, and his trial counsel rendered ineffective assistance when counsel failed to renew that request; (3) the trial court denied him a fair trial when it refused to grant him and his co-defendant separate trials or separate juries; (4) the trial court abused its discretion and deprived him of his right of confrontation when it permitted a witness's prior-recorded testimony to be read to the jury; (5) the trial court violated his right to confront his accuser when it admitted hearsay in the form of a witness's testimony from the preliminary examination; (6) the cumulative effect of errors at his trial deprived him of due process; (7) his trial counsel rendered ineffective assistance when counsel failed to present impeachment evidence and failed to recall a prosecution witness; (8) the prosecutor committed misconduct when the prosecutor introduced false testimony at trial; (9) the trial court abused its discretion and deprived him of his right to confront witnesses when it limited his questioning of an important prosecution witness; (10) the trial court should have granted a mistrial due to the jury's inconsistent verdict; and (11) he was denied counsel at a critical stage of the proceedings when his counsel refused to

investigate the case and refused to object to the prosecutor's misconduct and the trial court's failure to control the proceedings. (*See id*.)

In his answer to the petition, Respondent argued that Kennard failed to exhaust his state court remedies with respect to all of his claims. (*See* Ans. to Pet., ECF No. 10.) On May 10, 2018, Kennard filed a request in which he asked the Court to stay consideration of his petition while he returned to state court and pursued post-conviction review with respect to his second and eleventh claims for relief. (*See* Mot., ECF No. 20.) On June 4, 2018, this Court granted Kennard's request, and it stayed this case while Kennard attempted to exhaust his claims in state court (*See* Order, ECF No. 21.)

On August 15, 2018, Kennard signed and submitted a motion for relief from judgment in the state trial court. (*See* St. Ct. Mot., ECF No. 30-5, PageID.3945.) The state court docketed that motion on October 3, 2018. (*See id.*) In that state court motion, Kennard argued that (1) his trial counsel provided ineffective assistance when counsel failed to renew Kennard's request for an expert witness, refused to investigate Kenanrd's case, failed to object to prosecutorial misconduct, and failed to use certain impeachment evidence, (2) his appellate counsel provided ineffective assistance when counsel failed to raise meritorious claims on appeal, and (3) the verdict was against the great weight of the evidence. (*See id*., PageID.3947-3948.) The trial court denied Kennard's ineffective assistance of trial counsel claims on

6

procedural grounds under Michigan Court Rule 6.508(D)(2)[1] because those issues were previously raised before the Michigan Court of Appeals. (*See* St. Ct. Op. and Order, ECF No. 30-6, PageID.4008.)  The trial court then denied the ineffective assistance of appellate counsel and great weight of the evidence claims on the merits. (*See id.*, PageID.4008-4009.)

Kennard thereafter filed an application for leave to appeal in the Michigan Court of Appeals. (*See* ECF No. 30-7.)  That court denied leave.  The Michigan Supreme Court also denied Kennard's application for leave to appeal on the basis that he "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)."  *People v. Kennard*, 940 N.W.2d 119 (Mich. 2020).

## C

On April 29, 2020, Kennard returned to this Court and filed a motion to re-open these proceedings. (*See* Mot. ECF No. 24.)  Kennard also filed an amended habeas petition. (*See* Am. Pet., ECF No. 25.) The Court then re-opened this action. (*See* Order, ECF No. 27.)  Based on the Court's review of the petition and amended petition, it understands Kennard to be raising the following claims:

---

[1] Michigan Court Rule 6.508(D)(2) provides that, absent exceptions that do not apply here, a court "may not grant relief to the defendant if [a] motion [for relief from judgment] […] alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding."

I. Petitioner was denied due process of law by the unjustified lengthy delay between the offense and his arrest.

II. The trial court denied Petitioner's constitutional rights to present a defense, to equal protection and a fair trial by denying him funds to hire experts to assist the defense; and trial counsel was ineffective for failing to renew request for expert witness.

III. Petitioner was denied a fair trial by the trial court's refusal to grant a separate trial or separate juries.

IV. The trial court abused its discretion in ruling the prosecution had shown due diligence in attempting to subpoena, locate and produce Tanise Page, and thus permitting her prior recorded testimony to be read to the jury under MRE 804(a)(5), thereby denying Petitioner his state and federal constitutional right to confrontation.

V. Reversal of Petitioner's convictions is required where the trial court violated his sixth amendment right to confront his accuser by admitting at trial testimonial hearsay in the form of Tanise Page's preliminary examination testimony where appellant lacked the opportunity and similar motive to develop her testimony at that time.

VI. The cumulative effect of the errors in this case deprived Petitioner of his federal and state due process rights.

VII. Trial counsel denied the defendant effective assistance of counsel by (1) failing to present impeachment evidence at trial when testimonial evidence from an absent witness was read into the record by the prosecution and (2) failing to recall a prosecution witness when testimony was provided by the P.S.I. Investigator that the witness did not directly observe the murder, amounting to ineffective assistance of counsel and the denial of a fair trial.

VIII. The defendant was denied a fair trial where the prosecutor introduced the knowingly false testimony of an absentee witness into the record amounting to prosecutorial misconduct and denial of due process for the defendant.

IX.    The trial court abused its discretion by denying defense counsel's request to question the prosecution's most important witness about pending murder investigations in which he was the subject along with other information pertaining to criminal behavior which raised a question regarding his credibility as a witness against the defendant, amounting to a denial of the defendant's Sixth Amendment constitutional right to confront witnesses against him.

X.    Due process requires a mistrial in this case due to an inconsistent verdict where the jury acquitted the appellant of felony-firearm, and felon in possession, but convicted on the charge of murder where a gun was used to complete the crime.

XI.    Petitioner was denied his fundamental constitutional right to a fair trial as guaranteed under both State and Federal constitutions, when Petitioner was denied counsel at the critical "pre-trial" stage of the proceedings for refusal to investigate the case; for refusal to object to the court's failure to control the proceedings; and, for refusal to object to prosecutorial misconduct, all of which are tantamount to abandonment by counsel that results in structural error.

XII.    Court appointed trial counsel provided ineffective assistance by neglecting to use Detroi[]t Police Department Crime Report No. 1109150028.1 and the signed witness statement of Tanise Page despite its obvious exculpatory and impeachment value.

XIII.    Defendant was denied his Sixth Amendment right to the effective assistance of appellate counsel where appellate counsel neglected to raise significant and obvious issues in the Court of Appeals.

XIV.    Defendant's conviction for First Degree Premeditated Murder was against the great weight of the evidence.

(ECF Nos. 1, 25.)

On September 4, 2020, Respondent filed an answer in opposition to the amended petition. (*See* Ans., 29.) Respondent contends that the Court should deny the petition because certain claims are procedurally defaulted, the statute of limitations bars certain claims, and all of the claims lack merit. (*See id.*)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

The Court begins with Respondent's argument that Kennard has procedurally defaulted many of his claims.  The Court need not address that defense because procedural default is not a jurisdictional bar that prohibits the Court from reviewing the merits of Kennard's claims. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020);

*Trest v. Cain*, 522 U.S. 87, 89 (1997).  Indeed, the Sixth Circuit has explained that even where a claim may be procedurally defaulted, a district court "may sometimes reach the merits of [the] claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207.  Here, the Court concludes that because the procedural default analysis will not affect the outcome of this case, it is more efficient for the Court to proceed directly to the merits of Kennard's claims.

Likewise, the Court declines to consider Respondent's argument that some of Kennard's claims are barred by the statute of limitations.  As with procedural default, the statute of limitations is not a jurisdictional bar to habeas review.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).  Thus, the Court will not address Respondent's statute of limitations arguments and will proceed directly to addressing the merits of Kennard's claims.

**B**

Kennard first argues that he is entitled to habeas relief because the 18-month delay between the date of the murder and his actual arrest violated his due process rights.  Kennard asserts that the prosecution had evidence implicating him in the murder as early as September 2011, but the prosecution did not charge him until February 2013. (*See* Pet., ECF No. 1, PageID.51.)  He argues that the loss of

memories and witnesses, including "Tone," a witness who allegedly was outside at the time of the gunshots, prejudiced the outcome of his case.

The Michigan Court of Appeals considered this claim on direct review and rejected it on the basis that Kennard failed to establish prejudice:

> In the present case, defendant Kennard asserts that he was prejudiced by the loss of memories and witnesses, including "Tone," a witness who allegedly was outside at the time of the gunshots. However, general allegations that the memories of witnesses have suffered does not sufficiently demonstrate prejudice. *People v. Musser,* 259 Mich.App 215, 220; 673 NW2d 800 (2003). Further, there is no indication that defendant Kennard was unable to locate "Tone" because of the delay before his charge and arrest. Pokladek testified that when the police canvased the area, Tone called him to the door and said he did not want to be interviewed by the police. Even if Tone was outside at the time of the gunshots, there is no basis for concluding that he would have provided testimony that was not cumulative to that of Pokladek. Defendant Kennard also observes that DNA testing was completed in November 2012, and the charges were not filed until February 2013, but there is no information to indicate that this three-month delay provided the prosecution with a tactical advantage. Defendant Kennard's generalized and unsupported assertions of prejudice and the existence of a tactical advantage to the prosecution are insufficient to establish a due process violation. Accordingly, the trial court did not abuse its discretion by denying defendant Kennard's motion to dismiss with respect to this issue.

*Kennard*, 2015 WL 6438144, at *9.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. The Due Process Clause provides a limited role in protecting criminal defendants against pre-arrest or pre-indictment delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977). Proof of prejudice is generally a necessary but not sufficient element of a due process claim involving pre-indictment delay, and the due process inquiry must consider the reasons for the delay as well as prejudice to the accused. *See id*. at 790. The Sixth Circuit has "consistently read *Lovasco* to hold that dismissal for pre-indictment delay is warranted only when the defendant shows (1) substantial prejudice to his right to a fair trial *and* (2) that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (emphasis in original; internal quotation marks and citation omitted).

Here, Kennard has not identified any evidence that the prosecution delayed arresting and/or charging him for illegitimate reasons. Instead, Kennard simply says that there was an 18-month delay between when the prosecution obtained evidence implicating him in the murder and when he was charged with that crime. But identifying the delay alone is not enough. Simply put, it was not unreasonable for the Michigan Court of Appeals to conclude any delay here was not "an intentional device by the government to gain a tactical advantage." *Id.* Kennard is therefore not entitled to relief on this claim.

# C

## 1

In his second claim, Kennard argues that the state trial court violated his constitutional right to present a defense when it denied his request to appoint defense experts to review the medical and autopsy records and to conduct additional DNA and fingerprint testing on the pistol grip and knife evidence. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> First, defendant Kennard has not established that he was deprived of his right to present a defense. The trial court did not preclude defendant Kennard from pursuing a particular line of defense. Further, it did not outright deny his request for appointment of an independent pathologist or for DNA and fingerprint testing, but only required him to demonstrate a need for appointment of an expert and additional testing. Because the court did not preclude defendant Kennard from further investigating or pursuing these matters, there is no merit to his argument that the court deprived him of his right to present a defense.
>
> The trial court also did not abuse its discretion by denying defendant Kennard's request for appointment of an expert and for additional evidentiary testing. The trial court denied the requests without prejudice, pending counsel's acquisition of additional information regarding the need for an expert and whether the requested evidentiary materials were available and suitable for testing. Although defense counsel had posited that an independent pathology expert could analyze the medical examiner's conclusions regarding the angles of the bullets, the position of the shooter, and the position of the victim, the medical examiner testified at trial that she could not identify the position of the victim's body and the shooter's distance at the time of the shooting. Moreover, the trial court did not

14

> foreclose the possibility of an appointment of an expert if
> defendant Kennard could establish a need for an expert,
> but defendant Kennard never refiled his motion with a
> renewed showing of need.

*Kennard*, 2015 WL 6438144, at *10.

The Michigan Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established federal law. Simply put, it was not unreasonable for the Michigan Court of Appeals to conclude that Kennard's right to present a defense was not violated because the trial court provided him with the opportunity to establish a need for an appointment of an expert and additional testing, and he failed to do so. Moreover, Kennard has not presented any explanation or evidence to this Court as to how a DNA or pathologist expert would have aided in his defense. For all of these reasons, the Michigan Court of Appeals' rejection of this claim was not unreasonable. Kennard is therefore not entitled to relief on this claim.

## 2

Kennard also brings a related claim that his trial counsel was ineffective for failing to renew the request for an independent pathology expert. More specifically, Kennard argues that if his trial counsel had made an additional inquiry into the victim's x-ray and autopsy records, and interviewed the medical examiner, counsel would have learned that the victim was not shot "execution style" as the prosecution

suggested.   Kennard contends that this information would have warranted the appointment of a pathology expert to examine the autopsy records.

Kennard presented this claim to the state trial court in his motion for relief from judgment, but that court denied declined to consider the claim on the merits. The Court explained that Kennard had previously raised an ineffective assistance of trial counsel claim on direct appeal in the Michigan Supreme Court, and it said that under Michigan Court Rule 6.508(D)(2), it was "precluded from review[ing]" any claim that "'alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding.'" (St. Ct. Order, ECF No. 30-6, PageID.4008; quoting Mich. Ct. Rule 6.508(D)(2).)   Because the trial court did not review the merits of this claim, this Court considers it *de novo*.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).   An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   An attorney's performance is deficient when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688.   The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient

16

performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). To show prejudice under *Strickland*, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Here, Kennard has failed to show that he was prejudiced by his counsel's actions at trial. For example, Kennard's claim that additional inquiry by his trial counsel would have supported the need for a pathology expert is based on pure speculation. Kennard has neither presented any evidence that the autopsy records supported an alternative theory of how the victim was shot nor explained how such evidence would have aided his defense. Moreover, Kennard has failed to identify what testimony his proposed expert would have offered or shown that the result of his trial would have been different had his proposed expert so testified.

For all of these reasons, Kennard is not entitled to federal habeas relief on this claim.

## D

Kennard next argues that his right to a fair trial was violated because the state trial court denied his motion for a separate trial or separate jury from his co-defendant.  The Michigan Court of Appeals considered this argument on direct review and rejected it:

> Defendant Kennard argues that severance was necessary because of the differing defense theories that he and defendant Benford presented. To warrant severance, the defenses must be mutually exclusive or irreconcilable. *Id.* at 349. Incidental spillover prejudice is generally inevitable and insufficient to warrant severance. Rather, the tension between the defenses must cause a jury to believe one defendant at the expense of another. *Id.* Although defendants Kennard and Benford presented different defenses at trial, they were not mutually exclusive or irreconcilable. Defendant Kennard presented an alibi defense. Defendant Benford gave a statement in which he claimed that the victim threatened him with a gun, which led to a struggle over the gun during which defendant Benford was shot, but defendant Benford denied participating in the shooting death of the victim. The jury was not required to believe one defendant at the expense of the other. Moreover, both defendants argued that the real perpetrator was Stitts, whose testimony implicating each of them in the offense was not credible because it was motivated by his desire to avoid a life sentence.

> Defendant Kennard also cites the fact that defendant Benford had a motive to kill the victim in light of the prior stabbing incident, whereas the evidence against him was weak and inconsistent. The fact that the jury had a basis for finding that defendant Benford had a reason to harm

the victim, but lacked an apparent motive for defendant Kennard's participation in the offense, does not satisfy the criteria for severance of trials and does not demonstrate the necessary prejudice to warrant reversal on appeal. *Id.* at 346–349. Accordingly, the trial court did not abuse its discretion in denying defendant Kennard's motion for separate trials or a separate jury.

*Kennard*, 2015 WL 6438144, at ** 11-12.

The Michigan Court of Appeals' rejection of Kennard's separate trial claim was not contrary to, or an unreasonable application of, clearly established federal law. "As a general rule, joint trials are favored." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Thus, a petitioner "seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden." *Id*. "A defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial." *Id*. at 458. Instead, "[c]ourts should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 458-59.

Here, it was not unreasonable for the state appellate court to conclude that Kennard's defense and his co-defendant's defense were not incompatible and that the joint trial did not result in prejudice. Kennard has failed to present any evidence or argument as to how the joint trial deprived him of an opportunity to call witnesses or deprived him of a specific constitutional guarantee. Moreover, the state trial

court's instructions to the jury helped to mitigate any potential for prejudice affecting Kennard's substantial rights.  The trial court instructed the jurors to consider each defendant separately.  (*See* ECF No. 8-22, PageID.3060.)  And the trial court said that the joint trial was not evidence that the two defendants were associated with each other or that either one was guilty.  (*See id*.)  Finally, the trial court said that each defendant was entitled to have his guilt or innocence decided individually. (*See id*., PageID3085.)  And Kennard has not provided any evidence the jury failed to follow those instructions. *See Stanford*, 266 F.3d at 459 ("Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. [....] The jury was repeatedly admonished to separately consider the evidence as to each defendant, and the record reveals no indication that the court's instructions were ignored. By merely alleging potential juror confusion, [petitioner] has not satisfied his burden of showing that separate trials were necessary").

For all of these reasons, Kennard is not entitled to federal habeas relief on this claim.

## E

In his fourth and fifth claims, Kennard argues that the state trial court abused its discretion when it ruled that the prosecution had shown due diligence in attempting to subpoena, locate, and produce witness Tanise Page, and that the trial court violated his right to confrontation by admitting Page's preliminary

examination during trial.  The Court concludes that Kennard is not entitled to relief on either of those claims.

## 1

During the preliminary examination, Page testified that Kennard and Stitts came to her house around midnight on September 12, 2011, the same night the victim's body was discovered. (*See* ECF No. 8-3, PageID.313-314.)  According to Page, Kennard and Stitts appeared excited when they entered the home. (*See id*., PageID.319.)  She testified that Kennard and Stitts went into the bathroom to wash for approximately 20 minutes. (*See id*., PageID.324-325.)  She then testified that after Stitts left the house, Kennard told to her that if "[a]nyone that come[s] there, tell them that he's [Kennard] not there." (*Id*., PageID.329.)  Page further testified that when she saw Kennard again in December 2011, she overheard him state to someone: "[Y]ou know what happened to Rico . . . it could happen to you." (*Id*., PageID.339.)

The prosecutor subpoenaed Page to testify against at trial; however, she could not be located.  The prosecutor then moved to admit Page's preliminary examination testimony on the basis that she was an unavailable witness under Michigan Court Rule 804(a)(5).  The state trial court then conducted a due diligence hearing, in which Investigator Don Olsen testified about his efforts to locate Page. (*See* ECF No. 8-16, PageID.1691.)   The trial court concluded that admission of Page's

preliminary examination testimony was proper because she was unavailable, the

prosecution made reasonable efforts to locate her, and Kennard had a meaningful

opportunity to develop her testimony at the preliminary examination.   (*See id.*,

PageID.1728-1729.)

## 2

Kennard disagrees with the trial court's ruling and argues that the prosecutor

failed to diligently locate and produce Page during trial. The Michigan Court of

Appeals considered this claim on direct review and rejected it:

> The record discloses that Page did not voluntarily appear
> at the preliminary examination. After a bench warrant was
> issued, Investigator Don Olsen was able to pick her up and
> bring her to the preliminary exam. The exam was held in
> March 2013, and the trial began in September 2013.
> During that six-month period, Page moved from her
> former address, but did not notify the prosecutor, the
> secretary of state, or an individual caring for her child. She
> was involved with the Department of Human Services
> because of a child protection proceeding, but she did not
> maintain agency contact. There had been no activity with
> her bridge card since August 12, 2013, and there was no
> current contact information. Olsen was unable to obtain a
> new address for Page from the post office or the new
> occupants of Page's former residence. The address on her
> driver's license was a boarded up, vacant home. Olsen
> contacted a caregiver for one of Page's children and
> obtained Page's phone number, but no one answered that
> phone and Olsen was unable to leave a message.
> Consequently, Olsen also left word with Page's family
> members that he was trying to reach her to bring her to
> court for trial. He also checked police databases and
> enlisted the assistance of federal marshals to aid in his
> search.   The trial court did not abuse its discretion in

> determining that diligent efforts were made to locate Page
> for trial, and that she could not be produced despite the
> exercise of due diligence.

*Kennard*, 2015 WL 6438144, at *13.

Kennard's claim that the prosecutor failed to exercise due diligence is not cognizable on habeas review.  Under Michigan law, a prosecutor is required to list all witnesses he intends to call at trial. *See* Mich. Comp. Laws § 767.40a(1)-(2).  The prosecutor must then exercise due diligence to produce those individuals. *See* Mich. Comp. Laws § 767.40a(3).  Federal courts, however, do not enforce state laws in a habeas corpus proceeding. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  And federal law does not require the prosecutor to produce all known witnesses at trial. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review"); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Accordingly, the prosecutor's alleged lack of diligence in producing Page at trial did not implicate Kennard's federal rights, and the Court therefore cannot grant Kennard relief on that claim.

**3**

Kennard next contends that the state trial court violated his right to confrontation when it allowed the prosecutor to read Page's preliminary examination testimony to the jury.  Kennard insists that he was prevented from effectively cross-examining Page at trial.  The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Although defendant Kennard asserts that the cross-examination was deficient, he fails to identify any line of inquiry that would have been pursued if Page had appeared at trial. Defendant Kennard complains that the admission of Page's preliminary examination testimony did not allow the jury to view Page's demeanor at the preliminary examination. However, the Confrontation Clause only guarantees a defendant an opportunity for effective cross-examination. It does not require "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *United States v. Owens*, 484 U.S. 554, 559; 108 S.Ct. 838; 98 L.Ed.2d 951 (1988).

*Kennard*, 2015 WL 6438144, at *14.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that out-of-court statements that are "testimonial" in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior

opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. 541 U.S. 36, 68 (2004).

When prosecutors seek to admit a non-testifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007). The Supreme Court has noted that "when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy v. Cross*, 565 U.S. 65, 71-72 (2011). Moreover, "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Id*. at 72.

Kennard has not shown that he is entitled to relief on this claim. First, the Michigan Court of Appeals did not unreasonably conclude that Page was unavailable for purposes of the Confrontation Clause. Simply put, Kennard has not shown that

the prosecutor failed to make a good-faith effort to obtain Page's presence during trial.

Second, the Michigan Court of Appeals did not unreasonably conclude that Kennard had an adequate opportunity to cross-examine Page at the preliminary examination. At that hearing, Kennard was represented by counsel, who was given a reasonable opportunity to cross-examine Page. Under these circumstances, Kennard has not shown that the Michigan Court of Appeals unreasonably concluded that the admission of Page's preliminary examination testimony did not violate his rights under the Confrontation Clause. Kennard is therefore not entitled to federal habeas relief on this claim.

## F

Next, Kennard claims that the cumulative effect of the errors in this case deprived him of his due process rights. The Michigan Court of Appeals rejected that argument on direct review. *See Kennard*, 2015 WL 6438144, at *14.

This claim fails because it not cognizable in these proceedings. As the United States Court of Appeals for the Sixth Circuit has held, a cumulative error claim is not cognizable on federal habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). Thus, Kennard is not entitled to federal habeas relief on this claim.

## G

The Court next turns to Kennard's various ineffective assistance of trial counsel claims.   Kennard argues that his trial counsel provided ineffective assistance when counsel failed to (1) use Page's investigative subpoena testimony as impeachment evidence and declined to recall Stitts as a witness during trial, (2) investigate alibi witnesses and failed to object to the prosecutor's statements during closing argument, and (3) use Page's statements to the police to impeach her preliminary examination testimony admitted during trial.

As discussed above, an ineffective assistance of counsel claim has two components.   A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland*, 466 U.S. at 687.[2]   The Court will address each of Kennard's ineffective assistance of counsel arguments in turn.

---

[2] Where, as here, claims of ineffective assistance are decided on the merits by the state courts, obtaining habeas relief for those claims under *AEDPA* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations and quotation marks omitted).   "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

**1**

Kennard first argues that his trial counsel provided ineffective assistance when counsel failed to impeach Page with her inconsistent investigative subpoena statements and by failing to recall Stitts after Karen White, a probation officer, offered testimony regarding a prior statement she had taken from Stitts.

The Michigan Court of Appeals considered these arguments on direct review and rejected them:

> Although defendant Kennard complains that defense counsel failed to utilize Page's prior investigative interview statements to impeach her testimony, the record discloses that defense counsel had the benefit of the investigative interview at the preliminary examination and did unravel inconsistencies in Page's testimony at the preliminary examination. Further, the prosecutor also explored inconsistencies in Page's testimony at the preliminary examination, and those inconsistencies were made apparent to the jury when Page's preliminary examination testimony was read at trial. Thus, the record does not support this claim of ineffective assistance of counsel.

> We also reject defendant Kennard's argument that counsel was ineffective for failing to recall Stitts after Probation Officer White testified. White testified that Stitts gave a statement that omitted witnessing the victim's death and providing the gasoline. White's testimony served the purpose of revealing inconsistencies in Stitts's various accounts of the level of his participation in the events surrounding the victim's death. It was not necessary to recall Stitts merely for the purpose of confronting him with that apparent inconsistency. Moreover, counsel fully explored the many credibility problems with Stitt's testimony. Counsel established conflicts in the evidence

> regarding the extent of Stitts's participation in the events surrounding the victim's death, inconsistencies in his different accounts of the events, and elicited that he was charged with the victim's murder, but entered into a plea agreement to a reduced charge of accessory after the fact that allowed him to avoid a penalty of life imprisonment. Stitts's motive to lie was fully disclosed and explored at trial. The fact that counsel did not recall Stitts following White's testimony did not deprive defendant Kennard of a substantial defense. *People v. Chapo*, 283 Mich. App 360, 371; 770 NW2d 68 (2009).

*Kennard*, 2015 WL 6438144, at *15.

Kennard has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law.  As explained by the Michigan Court of Appeals, trial counsel had reviewed Page's investigative subpoena interview and utilized it to address the inconsistences in Page's testimony at the preliminary examination.  Because counsel explored the inconsistencies in Page's testimony during her cross-examination at the preliminary examination, which the jury heard at trial, it was not unreasonable for the Michigan Court of Appeals to conclude that Kennard did not suffer prejudice from the failure to introduce a copy of the interview at trial.

Likewise, Kennard has failed to show that his trial counsel provided ineffective assistance when counsel failed recall Stitts after the Probation Officer testified that Stitts omitted from his pre-sentence investigation interview that he witnessed the victim's death and provided gasoline to Kennard.  Even though Stitts'

statement during the interview was inconsistent with his trial testimony that he witnessed the victim's death, Kennard has not shown that that decision caused him prejudice.    Stitts' inconsistent statement was explored through the Probation Officer's testimony. (*See* ECF No. 8-2, PageID.2919-2920.)   Thus, Kennard has not shown that it was necessary to recall Stitts simply to highlight this inconsistency in his testimony.   Under these circumstances, it was not unreasonable for the Michigan Court of Appeals to reject this claim of ineffective assistance.

## 2

Kennard next argues that his trial counsel provided ineffective assistance when counsel failed to investigate two alibi witnesses and failed to object to the prosecutor's statements during closing argument.[3]   More specifically, he argues that counsel failed to investigate and interview two alibi witnesses named Rodney and Howard Grandberry.   He also argues that counsel was ineffective when counsel did

---

[3] To the extent that Kennard frames this claim as falling under *United States v. Cronic*, 466 U.S. 648 657 (1984), which provides a narrow exception to *Strickland's* prejudice inquiry and permits the presumption of prejudice where there has been a complete denial of counsel, the Court rejects his argument.  A failure to interview witnesses and/or to investigate their version of events, as Kennard alleges here, is generally not a "complete" failure to test the prosecution's case. And Kennard has not shown that such an alleged failure gives rise to a presumption of prejudice under *Cronic*. *See, e.g., Altman v. Winn*, 644 F. App'x 637, 641-62 (6th Cir. 2016) (refusing to apply *Cronic* presumption of prejudice to claim that defense counsel "failed to conduct any meaningful investigation" and failed to interview "crucial witnesses").   Therefore, the Court will proceed with reviewing this claim under *Strickland*.

not object to the prosecutor's comments on Stitts' involvement in the murder during closing argument. Kennard raised these arguments in his motion for relief from judgment in the state trial court, but that Court did not review the claims on the merits. As explained above, the state court concluded that because Kennard previously had raised an ineffective assistance claim on direct appeal, it could not consider his new ineffective assistance claims under Michigan Court Rule 6.508(D)(2). Because the state court did not reach the merits of these claims, the Court will review Kennard's arguments *de novo*.

Kennard has failed to show prejudice from his trial counsel's failure to investigate the proposed alibi witnesses for several reasons. First, Kennard has not presented any facts establishing that his trial counsel did not actually investigate the alibi witnesses. *See Wyniemko v. Smith*, 2000 WL 760704, at *4 (E.D. Mich. May 10, 2000) ("Conclusory allegations of ineffective assistance of counsel, without explanation or factual support, are insufficient to establish a constitutional issue"). Indeed, Kennard has conceded that his counsel identified those individuals as alibi witnesses in the Notice of Alibi. (*See* ECF No. 25, PageID.3773-3774.) Second, and more importantly, Kennard has not provided the Court with any affidavit or witness statement establishing each witnesses' proposed testimony. As the Sixth Circuit has recognized, where a habeas petitioner "has offered no evidence, beyond his assertions, to prove what the content of [the proposed witnesses'] testimony would

31

have been […] he cannot show that he was prejudiced by [the testimony's] omission." *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). *See also Jefferson v. Ohio*, 2020 WL 9719338, at *2 (6th Cir. Oct. 30, 2020) (explaining that where habeas petitioner "has made no showing regarding the alleged content of [ witness] testimony," he "has not shown how he was prejudiced by the failure to call [the witnesses] at trial"); ; *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must […] set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense").

Kennard has also failed to show that his counsel was ineffective when, during closing argument, his counsel failed to object to the prosecutor's commentary on Stitts' testimony. Kennard argues that the prosecutor improperly vouched for Stitts when she stated:

> So you don't want to cut a deal with the shooter so you cut a deal with the least culpable person so that the jury will have a full understanding about what happened because there was a gap -- yeah, I can tell you the blood trail and follow all that and circumstantially and I can have Mr. Stitts sitting here and I make the argument the same way, that they're all guilty of murder and I think the evidence would probably support that for you guys to say that I accept that he was in on it, I accept that that's what

happened, but some of you jurors might say, well, what did they really have on that Mr. Stitts?

He didn't do anything. He was just there. And might of said, you know, let's cut Mr. Stitts loose. So a decision is made to include Mr. Stitts as a witness so all of you will have the benefit of his testimony. You will have the benefit of knowing specifically what happened and the physical evidence supports Mr. Stitts' testimony.

(ECF No. 8-22, PageID.2961.)

The Court disagrees that the prosecutor improperly vouched for Stitts' credibility. Instead, she made reasonable inferences of Stitts' involvement in the murder based on the evidence. And she left it for the jury to decide what to believe. Moreover, the prosecutor's comments were not improper because she merely explained the State's rationale for calling Stitts as a witness and offering him a plea agreement. Because the underlying claim about the prosecutor lacks merit, Kennard's counsel was not ineffective for failing to object to the prosecutor's remarks. *See*, *e.g.*, *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) (explaining that trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection).

Kennard further argues that his counsel should have objected when the prosecutor misstated that Kennard, as opposed to Benford, held a gun to the victim's head during the altercation leading up to the victim's death. But Kennard has not established the required prejudice. Indeed, counsel clarified the misstatement and

stated during closing argument that the altercation was between the victim and Benford. (*See* ECF No. 8-22, PageID.3000.)  Moreover, to the extent any prejudice occurred, it was mitigated by the trial court's multiple instructions to the jury that the attorneys' arguments were not evidence. (*See id*., PageID.2989, 3056.)  For all of these reasons, habeas relief is not warranted on these claims.

### 3

In his final ineffective assistance of trial counsel claim, Kennard argues that his trial counsel failed to introduce a police report and written police statement that could have impeached Page's preliminary examination testimony introduced at trial. Kennard argues that counsel failed to introduce a police report which indicated that Page stated to an officer that "on September 15, 2011 three days after the alleged offense that . . . [the victim] . . . was with Defendant Kennard and two other unknown [males] in her house . . . out of breath and discussing an altercation that had occurred." (ECF No. 25, PageID.3778.)  Kennard also argues that counsel failed to introduce an August 22, 2012, statement to police in which Page indicated that "after the m[en] washed up, everybody left beside Rodney (Defendant Kennard) he stayed."  (*Id*.)

Kennard has failed to establish that his counsel's decision not to introduce the police report and prior witness statement was objectively unreasonable given counsel's cross-examination of Page during the preliminary examination.  Kennard

has also failed to show he was prejudiced given the cummnulative nature of this evidence and the other evidence that had been introduced to challenge Page's credibility.  For all of these reasons, the Court declines to grant Kennard habeas relief on this claim.

## H

Kennard next claims that the prosecutor improperly introduced perjured and coerced testimony in violation of his due process rights.  Specifically, Kennard argues that the inconsistencies in Page's preliminary examination testimony regarding prior statements to police and observations of Kennard amounted to perjured testimony.  Kennard further argues that the prosecution coerced Michael Pokladek into providing untruthful testimony during trial.  The Michigan Court of Appeals considered these claims on direct review and rejected them:

> Contrary to defendant Kennard's assertions, mere conflicts between Page's trial testimony and her earlier statements do not establish that the prosecutor knowingly presented false or perjured testimony. Moreover, the conflicts were not concealed by the prosecutor, but rather were revealed and explored during her testimony. Accordingly, the record does not support defendant Kennard's assertion that the prosecutor knowingly used false testimony to obtain his conviction.
>
> Defendant Kennard relies on an alleged "affidavit" submitted by Michael Pokladek to support his argument that the prosecutor improperly coerced Pokladek's testimony. Although Pokladek's statement is labeled an affidavit, it is not notarized and, therefore, is invalid. *Detroit Leasing Co v. Detroit*, 269 Mich. App 233, 236;

713 NW2d 269 (2005). Further, the document mostly contains allegations of conspiracy and forgery involving matters unrelated to defendant Kennard's appeal. The document contains one sentence pertinent to this case, which states that Pokladek's testimony was "given under extreme duress under threats of 'more jail time' and 'contempt of court' and were obviously not given of my own free will." The document does not identify the sources of any threats, and it does not allege that any of Pokladek's trial testimony was not true. It also does not identify any other material testimony that he could have offered. Considering that Pokladek's purported "affidavit" is not sworn, that his reluctance to testify and displeasure at not being offered a deal by the prosecutor for his testimony was disclosed at trial, that he did not allege that his trial testimony was not true, and he did not identify any other material testimony that he could have offered, this claim of prosecutorial misconduct does not entitle defendant Kennard to appellate relief.

*Kennard*, 2015 WL 6438144, at *16.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's conduct will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

With respect to Kennard's claim that the prosecution offered perjured testimony, the Michigan Court of Appeals did not unreasonably reject that claim. To establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony, a habeas petitioner must show that a witness' statement was "indisputably false." *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). But here, Kennard's primary evidence in support of his perjury claim are the inconsistencies in Page's preliminary examination testimony. Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *See Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). Moreover, the fact that a witness contradicts herself or changes her story also does not establish perjury. *See Malcum v. Burt*, 276 F.Supp.2d 664, 684 (E.D. Mich. 2003). Because Kennard relies exclusively upon the inconsistencies in Page's testimony to support his claim, he has not shown that the rejection of this claim was unreasonable.

Kennard further claims that the prosecutor coerced witness Michael Pokladek into providing untruthful trial testimony. In support of that claim, Kennard relies on an unsworn affidavit in which Pokladek indicates that the prosecutor threatened him with "more jail time" and "contempt of court" if he refused to testify. (ECF No. 8-27, PageID.3352.) The affidavit, in whole, provides as follows:

37

> I Michael Lawrence Pokladek, a citizen of the United States of America, allege conspiratorial behavior amongst several judges and prosecutors in employ by the de facto corporation known as the Frank Murphy Hall of Justice in Detroit, Michigan.   For the record, this tribunal is in violation of United States Codes Title 18 Section 241: conspiracy against rights & Section 242: deprivation of rights under color of law.  Mr. Pokaldek further alleges that the Wayne County Prosecutor's Office is guilty of coercion and extortion and that all testimony before Judge Talon in the trial of Lester Benford & Rodney Clarence Kennard was given under extreme duress under threats of "more jail time" and "contempt of court" and were obviously not given of my own free will.  Furthermore, Mr. Pokladek alleges that certain employees are guilty of forgery and will produce evidence his commitment to [the] Department of Corrections as well as an order of Probation that contain said forgeries.  Furthermore, Mr. Pokladek alleges that a certain employee of the Frank Murphy Hall of Justice is in violation of 27 C.F.R. 71.11 commercial crimes against the revenue [sic] for diverting excessive funds into the cocaine and heroin trade and contributing to the delinquency of a minor.  Overn and done.  Michael L. Pokaldek.  11-21-13.

(*Id.*)

Simply put, Pokaldek's unsworn statement is not persuasive proof of coercion.  Much of the statement has nothing to do with Kennard's case, and instead makes unsubstantiated accusations about employees at the Frank Murphy Hall of Justice.  More importantly, nowhere in the statement does Pokladek say that the testimony he provided at trial – even if coerced – was untrue.  For all of these reasons, Kennard has not shown that the Michigan Court of Appeals unreasonably rejected his claim arising out of Pokaldek's unsworn statement.

38

# I

Kennard next argues that the state trial court violated his right to confrontation when the court denied his trial counsel's request to cross-examine Stitts about a separate, pending murder investigation to establish Stitts' bias, and by excluding witness Locaster Croskey's testimony regarding Stitts' habit of possessing a gun. The Michigan Court of Appeals considered these claims on direct appeal and rejected them:

> On cross-examination, Stitts was questioned regarding the fact that he was initially charged with murder and facing life imprisonment, but pleaded guilty to accessory after the fact, a crime with a five-year maximum prison term. Stitts also testified that he had charges pending in other courts. When asked about a case in Grosse Pointe, Stitts responded that there was "nothing yet." Thereafter, counsel sought to question Stitts about whether he was charged or arrested for a Grosse Pointe murder. Outside the presence of the jury, Stitts testified that he had been questioned about the case, but denied that he had been charged or was a suspect. Stitts also denied being told by anyone that defendant Kennard had given a statement or information implicating Stitts in that case. The trial court thereafter prohibited any additional questioning on this subject. Defendant Kennard argues that the excluded testimony was relevant to Stitts's credibility and bias as a witness, and exclusion of this testimony violated his constitutional right of confrontation.
>
> Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Michigan takes a broad approach regarding cross-examination regarding witness bias.

*People v. Layher*, 464 Mich. 756, 768; 631 NW2d 281 (2001). Bias refers to the relationship between a party and a witness that might lead the witness to slant testimony. *Id*. at 763 (citation omitted). "[E]vidence of bias arising from past arrest without conviction is admissible if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice." *Id*. at 768. "A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v. Kelly*, 231 Mich. App 627, 644; 588 NW2d 480 (1998). But there is no right to cross-examine on irrelevant issues. *People v. Hackett*, 421 Mich. 338, 344; 365 NW2d 120 (1984).

Defendants sought to demonstrate that Stitts was biased against defendant Kennard for implicating Stitts in a Grosse Pointe homicide. Such evidence would have supported an argument that Stitts had a reason to be biased against defendant Kennard, and thus would be relevant to Stitts's credibility. The trial court afforded defendant Kennard an opportunity to question Stitts on a separate record to establish a foundation for the desired testimony, but Stitts denied that he was a suspect in the Grosse Pointe case or being told by anyone that defendant Kennard had implicated him in that case, and defendant Kennard did not present any contrary evidence showing otherwise. Because defendant Kennard failed to establish a foundation for interjecting this collateral matter for the purpose of showing Stitts's bias against defendants, the trial court did not abuse its discretion in excluding the testimony.

Additionally, the record does not support defendant Kennard's contention that the trial court excluded evidence regarding Stitts's possession of a gun.

*Kennard*, 2015 WL 6438144, at ** 16-17.

Kennard has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law.  "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).  Thus, trial judges have "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986).

The Michigan Court of Appeals' rejection of Kenanrd's claim arising out of the limitation of Stitts' cross-examination was not unreasonable.  Indeed, it was not unreasonable for that court to conclude that Stitts' testimony about his involvement in the Grosse Pointe murder was irrelevant because Stitts denied that he was a suspect and denied being told by anyone that Kennard had implicated him in that case.  Moreover, Kennard failed to elicit any facts suggesting Stitts' bias or lack of credibility.

Kennard has also failed to show that the Michigan Court of Appeals' rejection of his claim arising out of the exclusion of Croskey's testimony was unreasonable.  When asked by Kennard's counsel if he had known Stitts as always carrying a gun,

Croskey responded, "yes." (ECF No. 8-14, PageID.1326.)   This testimony was admitted before the jury.

For all of these reasons, Kennard is not entitled to habeas relief on his confrontation clam.

## J

Next, Kennard argues that the jury's verdict was inconsistent because the jury convicted him of first-degree premeditated murder but acquitted him of the firearms charges.  But that claim is generally not cognizable on federal habeas review, and Kennard has not provided any basis under which the Court could review the claim. *See, e.g.*, *Freeman v. Lebanon Correctional Inst., Superintendent*, 1999 WL 801573 at * 2 (6th Cir. Sept. 28, 1999) (noting that an "inconsistency in a jury's verdict does not warrant habeas corpus relief"); *Cunningham v. Palmer*, 2010 WL 891152, at *5 (E.D. Mich. Mar. 10, 2010) (explaining that "[a]ny alleged inconsistency in a state court verdict is [] a non-cognizable claim on federal habeas review").  Kennard is therefore not entitled to relief on this claim.

## K

Kennard next claims that his appellate counsel was ineffective when counsel failed to raise certain issues on direct appeal. The state trial court rejected this claim in its order denying Kennard's motion for relief from judgment. (*See* ECF No. 30-6,

PageID.4008.)  Kennard has not shown that that decision was contrary to, or an unreasonable application of, clearly established federal law.

A court-appointed appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Here, it was not unreasonable for the state court reject Kenanrd's ineffective of appellate counsel claim.  Indeed, Kennard has not shown that any of the claims that he wanted his appellate counsel to raise on direct review were meritorious. And "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Therefore, Kennard is not entitled to federal habeas relief on this claim.

## L

Finally, Kennard claims that the jury's verdict went against the great weight of the evidence.  A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence because that is a "state-law argument" and a "federal court is only allowed to review issues of federal law in a habeas proceeding." *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). *See also Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict

was against the manifest weight of the evidence).  Kennard is therefore not entitled to federal habeas relief on this claim.

## IV

For all of the reasons explained above, Kennard's petition for a writ of habeas corpus is **DENIED**. In order to appeal the Court's decision, Kennard must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Kennard a certificate of appealability because jurists of reason could not debate the Court's conclusion that Kennard failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Kennard a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability.  *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status on appeal if it finds that an appeal is being

44

taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a).

Although jurists of reason would not debate this Court's resolution of Kennard's

claims, an appeal could be taken in good faith. Therefore, Kennard may proceed *in*

*forma pauperis* on appeal.

V

Accordingly, for all the reasons stated above, **IT IS HEREBY ORDERED**

that the Court (1) **DENIES WITH PREJUDICE** Kennard's petition for a writ of

habeas corpus (ECF Nos. 1, 25), (2) **DENIES** Kennard a certificate of appealability,

and (3) **GRANTS** Kennard permission to appeal *in forma pauperis*.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2023

I hereby certify that a copy of the foregoing document was served upon the
parties and/or counsel of record on September 26, 2023, by electronic means and/or
ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126